[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Larry D. Spector, Trustee for Martin Spector Trust ("Spector") has brought this action alleging claims for damages arising out of the management of a now dissolved partnership which existed from 1961 until March 31, 1995. Said partnership had constructed, owned and operated a shopping plaza known as the TriTown Shopping Plaza ("TriTown") in the Towns of Seymour, Derby, and Ansonia, Connecticut. Martin Spector, father of the plaintiff, was one of the four original partners in the TriTown partnership.
The defendants are Simon Konover, the last surviving original partner of the TriTown partnership and Konover Management Corporation ("KMC"), the managing agent of TriTown for the last ten (10) years of the partnership.
Plaintiff alleges that on or about February 1, 1961, defendant, Simon Konover, together with Abner Rosen, Marvin Patron, and, Martin Spector, entered into an agreement wherein a corporation was to be formed for the purpose of construction of a building on a parcel of real property located in the Towns of Ansonia and Derby, that such corporation was never formed, but that the four named persons carried on business as a partnership known as TriTown Realty Corporation; that the interest of Martin Spector, upon his death passed to the plaintiff; that the ownership interest of Martin Spector in the partnership was 25% and that of Simon Konover was 25%; that Simon Konover acted as the managing partner of the partnership; that Simon Konover employed Konover Management Corporation ("KMC") to manage the partnership which consisted of a commercial shopping center; that KMC is a corporation owned and/or controlled by Simon Konover; and that on or about March 31, 1995, the partnership property was sold.
In the first count the plaintiff seeks an accounting of all rents, income and operating expenses, and payment of his share of the net income from the shopping center.
In the second count the plaintiff has alleged a breach of fiduciary duty on the part of said defendants by committing CT Page 12727 various improper acts in the management of the partnership property.
In the third count the plaintiff seeks a constructive trust.
In the fourth count plaintiff alleges a violation of CUTPA, General Statutes §§ 42-110a, et seq.
A trial to the court was held on September 16th, 17th, 18th, 23rd, 24th, and 25th, 1997. The court finds the following facts:
At the outset of the trial the court was notified that the first count of the complaint requesting an accounting was no longer being pursued inasmuch as the plaintiff has already received an accounting.
Thus the trial concerned whether the defendants breached a fiduciary duty to the plaintiff by committing certain acts of mismanagement (as alleged in Count Two); whether those alleged acts of mismanagement require that a constructive trust be established (as alleged in Count Three); and whether defendants have committed unfair or deceptive trade practices (as alleged in Count Four);
In February of 1961 an agreement was signed by Abner Rosenberg, Martin Spector, Simon Konover, and Marvin Patron (Ex. 1), in which they agreed to form various corporations to build and operate the shopping center. The plaintiff, son of Martin Spector, attended several meetings in which the formation of a corporation was discussed. However, he attended no meetings in which the formation of a partnership was discussed. Ultimately, no corporation was formed, and there is nothing in writing to indicate any agreement in regard to formation of a partnership. The four men who had agreed to form a corporation, however, did act as a partnership and they apparently agreed that each would be entitled to a 25% share of whatever profit and equity was ultimately produced by the partnership. Further, they apparently agreed that Martin Spector and Abner Rosenberg would sign a ground lease for the shopping center, and Simon Konover and Marvin Patron would be responsible for finding financing, construction, management and leasing of the shopping center.
Inasmuch as there was an apparent agreement that Konover and Patron would be responsible for the management of the shopping center, certain issues were raised concerning the management or CT Page 12728 mismanagement of the partnership. Plaintiff in count two alleges that Konover and his corporation, KMC, mismanaged the partnership in certain respects, and further that they charged management fees and leasing commissions wherein said payments were never agreed to by the other partners. The claims set forth in count two are as follows:
First, plaintiff claims that the defendants failed to make proper and timely distribution of income, that they retained and accumulated partnership income, and failed to pay over interest on the accumulated funds. It is undisputed that the plaintiff was paid, by way of settlement, his share of the cash balance on hand when the partnership was dissolved. However, he claims he is entitled to interest on the cash reserve maintained for the property, that the cash reserve maintained for the property was excessively high and if it had been maintained at a lower level, distributions could have been made earlier and the plaintiff could have received interest income on the distributions. Clearly his claim is limited to an allegation of lost interest income only. After compounding interest and crediting payments received by the plaintiff, he claims he is entitled to lost interest income of $239,471.58 if an 18% rate of interest was used and $88,591.13 if a 10% rate of interest was used (Exhibit 97).
This calculation was based on the assumption that $20,000, or two months expenses, would be the appropriate amount to be reserved prior to distributions. However, the court believes that six months expenses would be a more appropriate benchmark as a starting point for a reserve. Further, the court finds that the following considerations required the TriTown partnership to carry a substantially higher reserve than the six months minimum reserve. TriTown was aging and major repairs were needed. However, these major repairs were being put off pending negotiations with the tenants. Ames, the single largest anchor tenant, was in a Chapter 11 bankruptcy throughout the last five years of the partnership. Also, there was a high turnover rate of the small store tenants. The financial condition of Ames was of particular concern because the cost associated with reconstructing the premises for a new tenant could run several times the actual reserve maintenance. Thus, the court finds that the plaintiff has not convinced the court that the defendants failed to make proper and timely distributions. Accordingly, he has been unable to show what, if any, interest he would be entitled to. CT Page 12729
Second, the plaintiff claims that defendants co-mingled partnership funds with other Konover entities. While this is true, the fact remains that defendants always took responsibility for the cash reserves and reported them accurately to the plaintiff. The defendants paid these bills of the property when they fell due, including over $111,000 for a new Big Y roof in 1993 and all of plaintiff's share of the cash balance in 1994 (Exhibits 69 and 94). Even if one were to hold that the commingling was improper, the court fails to see how the plaintiff has been damaged thereby.
Third, plaintiff claims that defendants donated partnership funds to a charity without a vote of the partners. In this regard the partnership paid $1,000 in 1987 towards the Newington Children's Hospital. This contribution was reported on one of the monthly reports to the plaintiff, and defendants received no objection thereto. The court finds this contributions was an ordinary public relations expense of doing business. It does not amount to mismanagement.
Fourth, plaintiff alleges that the defendants insured the partnership property as part of a "blanket" policy with other Konover properties and paid or charged to the partnership unreasonable premiums. The court finds that it was to the partnership's advantage to have a blanket policy with other Konover properties. By so doing Konover managed to spread the insurance risk among several properties. The plaintiff who now owns the partnership property has proceeded to purchase a "stand alone" policy. This has subjected the property to a greater risk than it would have been if insured under the blanket policy held by Konover. The reason for this is that a significant loss and resulting claim could result in the loss of plaintiff's insurance entirely.
The court also finds that TriTown had not overpaid for its insurance. One of defendant's witnesses testified that the policy acquired by Mr. Spector was inferior to the Konover policy since it has $56,000,000 less of umbrella liability coverage and cost about $1,000 more than the Konover program during the previous year. Thus, the insurance purchased by Konover appears to have been a superior policy at less cost.
Fifth, plaintiff alleges that the partnership has paid and been charged management fees and leasing commissions to KMC and/or a Konover related company. In this regard it is his claim CT Page 12730 that Konover had agreed to manage the property without receiving any management fees or leasing commissions. The court finds that the plaintiff has failed to prove any such agreement. In fact, it appears that there were never any meetings or formal votes of the partnership at any time. Thus, it cannot be determined that there were any such agreements.
Although the defendants did not charge management fees in the early years of the partnership, Mr. Konover testified that out-of-pocket expenses incurred by him were in fact reimbursed. Later, even during the lifetime of Martin Spector and for several years after his death, the K and P Management Company charged management fees and commissions. These charges appeared on the TriTown partnership monthly statements as they were incurred. The statements were issued for years before and after Martin Spector's death without complaint by any of the partners, including the plaintiff. The management services included maintaining the shopping center including the common areas, landscaping and snow removal, collecting the rents from the tenants, and related services. Additionally, the defendants charged leasing commissions paid by the TriTown partnership. Here again the leasing commission charges appeared on the monthly statements without complaint prior to the death of Martin Spector without complaint from any of the partners. A leasing commission is that portion of the cash flow of a lease agreement which is attributed to the leasing agent for bringing about a lease agreement. After hearing the evidence the court finds the leasing commissions charged by the defendants were reasonable.
There was no testimony brought forth, other than that of the plaintiff's claimed recollection of two or three meetings in 1961, that Mr. Konover and Mr. Patron were expected to bear the burden of the cost of managing and leasing the properties out of their shares of equity in the partnership. The court does not believe that these defendants as managers of the property were expected to pay such expenses out of their own pockets, especially when they were solely responsible for the management of the shopping center.
Sixth, plaintiff claims that the defendants conducted the aforementioned actions without the vote of the partnership. As stated before, however, no formal partnership was ever in fact organized, nor has there been anything in writing to show what the duties of the various so-called partners were to be. All the court could determine was the following:
(1) That four people (including Martin Spector and Simon (Konover agreed to form corporations for the purpose of building and operating a shopping center; (2) That no corporation was formed; (3) That Martin Spector's role in the subsequent loosely formed partnership was that of an investor only; (a) That Martin Spector was not responsible for any of the day-to-day operations of the shopping center; (5) That the management of the shopping center was handled almost exclusively by Patron (another partner), Konover, and KMC; (6) That during the course of his life until he died in 1974, Martin Spector expressed general satisfaction with the operation of the partnership shopping center; (7) That for several years after his father's death, the plaintiff failed to express any dissatisfaction with the operation of the shopping center although he received monthly reports concerning such operation.
In short, the court finds that the plaintiff has failed to prove when or even if votes by the various partners should have been required during the course of managing the shopping center.
The court finds that the plaintiff has failed to prove any of his claims under count two of the complaint. Furthermore, the court finds all of the disbursements which the plaintiff complained about were fair and reasonable. These included the legal fees required as part of the management of the shopping center, settlement of certain claims, maintenance fees, lease commissions, insurance disbursements, and the charitable donation.
In light of the court's findings under count two, the court finds that the plaintiff cannot prevail under his request for a constructive trust under count three or his claim of a violation of CUTPA under count four.
Accordingly, judgment may enter for both defendants, plus costs.
Judge Trial Referee Allen, J.
CT Page 12731